PUBLISHED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| S.R. FOR R.R., A MINOR CHILD, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:04CV00085 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| JO ANNE B. BARNHART, ) | By: James P. Jones |
| COMMISSIONER OF SOCIAL ) | Chief United States District Judge |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

*Jimmie L. Hess, Jr., Jimmie Hess, Jr., P.C., Abingdon, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

In this child's social security case, I affirm the final decision of the Commissioner.

*I. Background.*

S.R. filed this action on behalf of her minor son, R.R., challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her son's claim for supplemental security income ("SSI") benefits under title XVI of the Social

Security Act, 42 U.S.C.A. §§ 1381-1383d (West 2003 & Supp. 2004) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 1383(c)(3).

My review is limited to a determination whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

Previous applications were filed on R.R.'s behalf on October 18, 1996, and June 11, 1999. (R. at 19.) Both were denied initially and on reconsideration. The determination of the Social Security Administration ("SSA") became final as to those two applications on May 11, 1999, and September 21, 2000, respectively. (*Id.*)

The plaintiff filed the current application for benefits on behalf of her son on July 10, 2002, alleging disability since the date of R.R.'s birth. The claim was denied initially and on reconsideration, and a request for a hearing was timely filed. S.R. received a hearing before an administrative law judge ("ALJ") on January 8, 2004. By decision dated March 25, 2004, the ALJ found that the plaintiff was not disabled

within the meaning of the Act. The SSA Appeals Council denied review, and thus the ALJ's opinion constitutes the final decision of the Commissioner.

The parties have briefed the issues, the plaintiff has presented oral argument, and the case is now ripe for decision.

## *II. Facts.*

R.R. is a sixteen-year-old male. (R. at 20.) At the time of the ALJ's hearing, he was fifteen years old and enrolled in the eighth grade. (*Id*.) R.R. claims disability based upon a "[l]earning [d]isability, [n]erves and ADHD [attention deficit hyperactive disorder]." (R. at 455.)

R.R. lives with his parents and brother, and spends weekends at his aunt's house. (*See* R. at 22.) He has been in special education since starting school. (*Id*.) R.R. sometimes has problems swallowing, does not sleep well, and is a sensitive child who cries easily. (*Id*.)

In determining whether R.R. is eligible for benefits, the ALJ reviewed medical records from Welch Emergency Hospital; psychologist Dale M. Rice, M.A.; William C. Steinhoff, M.A.; Jeffrey Boggess; psychiatrist N. Mansoor, M.D.; Southern Highlands Community Mental Health Center; school psychologist Ellen Wallace; and two state agency physicians. He also reviewed R.R.'s report cards and records from

his teachers, and heard testimony from R.R.'s mother and medical expert Arthur C. Ballas, M.D.

Based upon the evidence, the ALJ determined that R.R. suffers from the severe impairments of attention deficit hyperactive disorder ("ADHD"), pervasive developmental disorder, and borderline intellectual functioning. (R. at 20.) However, the ALJ concluded that those impairments do not meet or functionally equal any listed impairment. (R. at 27.)

### III. Analysis.

The plaintiff contends the ALJ's determination that R.R.'s impairments do not meet or equal Listing of Impairments § 112.10, "autistic disorder and other pervasive developmental disorders," or § 112.11, ADHD, is not supported by substantial evidence. Specifically, she asserts that the ALJ erred in determining that R.R. has a less than marked limitation in the "B" criterium of age-appropriate social functioning, and in the domain of "acquiring and using information." For the following reasons, I disagree.

A child under age eighteen is considered disabled, and is entitled to SSI benefits, if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 1382c(a)(3)(c). The Social Security regulations promulgated a three-step test for the purpose of adjudicating children's disability claims under this standard. 20 C.F.R. § 416.924(b)-(d) (2004). That test, known as the Children's Benefit Analysis, requires the ALJ to determine: (1) whether the child is engaged in "substantial gainful activity," (2) whether the child has "a medically determinable impairment[] that is severe," and (3) whether the child's "impairment(s) . . . meet, medically equal, or functionally equal [a] list[ed] impairment]." *Id*.

The plaintiff's claims relate to the ALJ's adjudication at step three of the Children's Benefit Analysis. The Social Security regulations list specific impairments relevant to step three, some of which apply only to children. *Id*. at § 416.924(d). A claimant bears the burden of proving that his or her impairment satisfies, or "meets," one of the listed impairments. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see also Hall ex rel. Lee v. Apfel*, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000) (child's claim). Once a claimant makes such a showing, an irrebuttable presumption of disability arises and benefits must be awarded. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).

To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. "A" criteria are medical findings and "B" criteria "describe impairment-related functional limitations." *Id.* An impairment that shows some but not all of the criteria, no matter how severely, does not qualify. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

To meet listed impairment § 112.10, the pervasive developmental disorder listing, a claimant must show: (1) qualitative deficits in the development of reciprocal social interaction and in the development of verbal and nonverbal communication and imaginative activity (the "A" criteria); and (2) a marked impairment in at least two appropriate age group criteria, including cognitive/communicative function, social functioning, personal functioning, or difficulties in maintaining concentration, persistence, or pace (the "B" criteria). *Id.* at app. 1, pt. B § 112.10. To meet listed impairment § 112.11, the ADHD listing, a claimant must show: (1) a marked limitation in inattention, impulsiveness, and hyperactivity (the "A" criteria), and (2) a marked impairment in at least two of the same "B" criteria listed under § 112.10. *Id.* at § 112.11. A "marked" limitation is one which "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It "is 'more than moderate' but 'less than extreme.'" *Id.*

If a child's impairments do not "meet" a listed impairment, they may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. *See id*. at § 416.926a. A child's impairments "equal" a listed impairment when the child demonstrates a "'marked' limitation[] in two domains of functioning or an 'extreme' limitation in one domain." *Id*. at § 416.926a(a). Domain analysis is equivalent to analysis of the "A" and "B" criteria for listed impairments, and focuses on "broad areas of functioning intended to capture all of what a child can or cannot do." *Id*. at § 416.926a(b)(1). The regulations include six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id*.

*A.*

First, the plaintiff argues that the ALJ erred in his analysis of whether her son R.R. "meets" a listed impairment because he relied upon inconsistent testimony from medical expert Dr. Ballas. Dr. Ballas testified that R.R. has a "less than marked" impairment in age-appropriate social functioning. Age-appropriate social functioning is a "B" criterium relevant to the determination whether a claimant "meets" a listed impairment. However, Dr. Ballas also testified that R.R. has a "marked" impairment in interacting and relating with others. Interacting and relating with others is a

domain relevant to the determination of whether a claimant "equals" a listed impairment. The plaintiff contends that these two findings are inconsistent and that the ALJ erred by relying on Dr. Ballas' testimony. I agree, but ultimately conclude that the error had no effect on the ALJ's ultimate conclusion that R.R.'s impairments do not "meet" a listed impairment.[1]

"Age-appropriate social functioning" is not identical to "interacting and relating with others," but the two are analogous.

> "[S]ocial functioning refers to a child's capacity to form and maintain relationships with parents, other adults, and peers. Social functioning includes the ability to get along with others (e.g., family members, neighborhood friends, classmates, teachers)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C)(2)(b). The analogous "interacting and relating with others" provision of § 416.926a "consider[s] how well [the child] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his or her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." *Id*. § 416.926a(i).

---

[1] The plaintiff also alleges that the ALJ reached an inconsistent conclusion as to whether R.R. "equals" the "A" criteria of listing 112.11. S.R. recalls Dr. Ballas testifying that R.R. does equal the "A" criteria, and argues that the ALJ incorrectly summarized Dr. Ballas' testimony as follows: "Dr. Ballas testified that the claimant 'almost equals 112.11A' . . . ." (Pl.'s Br. Supp. Mot. Summ. J. at 2 (citing R. at 645 and quoting R. at 21).) A close reading of the transcript reveals that the ALJ's summary was accurate. (R. at 644-45.) More importantly, the ALJ did explicitly find that "the claimant suffers from [ADHD]. Records document . . . [that R.R.] *thus satisfi[es] the requirements of section 112.11A*." (*Id*. (emphasis added).) There is no inconsistency regarding the "A" criteria.

- 8 -

*Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 654 (8th Cir. 2004) (alterations in original).   Dr. Ballas' testimony about R.R.'s social skills does appear to have been inconsistent.  Dr. Ballas offered clear testimony as to R.R.'s age-appropriate social functioning, stating "[a]ge-appropriate social functioning—once again, the evidence indicates some impairment but not a marked impairment, less than marked." (R. at 646.)  However, his testimony as to R.R.'s "interacting and relating with others" was admittedly confusing.  Dr. Ballas seems to have inconsistently concluded that R.R. has a marked impairment in that domain.[2]

---

[2]  
| A [BALLAS]: | Interacting and relating with others— I'm inclined to rate that as marked. |

. . .

| Q [ALJ]: | Tell me about the relate with others at the marked level.  What makes that marked in your view? |
| A: | I said less than marked.  Did I?  Excuse me. |
| Q: | I took that as the only one that you gave us as marked. |

. . .

| A: | The reason I interpreted that as marked is, he for one reason or another has apparently not established what we would consider normal interpersonal relation.  You know, we talked about that triple redundancy, whatever it was, reciprocal interpersonal behavior. I think for—as I said for—we don't know what the reasons are. It may be the overriding monitoring his family and his mother have on him but he apparently has not established what |

- 9 -

Nevertheless, this inconsistency has no impact on the ALJ's overall finding that R.R.'s impairments fail to "meet" a listed impairment. R.R. must show a marked impairment in *at least two* "B" criteria in order to demonstrate that his impairments "meet" a listed impairment. The inconsistency in Dr. Ballas' testimony suggests that the ALJ should have found that R.R. has a marked impairment in the "B" criterium of age-appropriate social functioning. However, R.R. still would not be entitled to benefits unless he can demonstrate a marked impairment in a second "B" criteria. The ALJ determined that R.R. failed to make such a showing and the plaintiff does not contest that finding. Accordingly, I conclude the ALJ's determination that R.R.'s

---

> I would consider anywhere near normal interpersonal relationships with people of his own age or temperament, so forth, so I was inclined to—
>
> . . .
>
> A: If I'm going to interpret the word "relate." I assume that one can establish friendships and some sort of—at least some level of intimacy with others and—
>
> . . .
>
> A: We've just not heard anything that would suggest that he is able to establish even minimal types of friendship relations or intimate relationships with others outside of his immediate family.

(R. at 648-51.)

impairments do not "meet" § 112.10 and § 112.11 is supported by substantial evidence.

*B.*

Next, the plaintiff argues that the ALJ erred in his analysis of whether R.R. "equals" a listed impairment. As previously explained, to "equal" a listed impairment, a claimant must demonstrate "marked" limitations in at least two domains of functioning. Here, the ALJ found that R.R. has a marked impairment in the domain of interacting and relating with others. The plaintiff argues that the ALJ should have found that R.R. also has a marked impairment in a second domain—acquiring and using information. Specifically, the plaintiff argues that the ALJ: (1) mistakenly relied upon inconsistent and subjective IQ evidence from Dr. Ballas, (2) completely ignored evidence of a marked memory deficit from William C. Steinhoff, M.A., and (3) inconsistently concluded that R.R. has no marked limitation in acquiring and using information, but has a marked limitation in interacting and relating with others.

The acquiring and using information domain "considers how well the child acquires or learns information, and how well the child uses information learned." (R. at 24; *see also* 20 C.F.R. § 416.926a(g).) In his analysis of R.R.'s ability to acquire and use information, the ALJ determined that

- 11 -

> the child has less than "marked" limitations. The claimant's scores on intelligence reflected borderline intellectual functioning, and he is performing poorly in school. However, he is progressing. He is able to communicate effectively in school, at home and in the community. He responds appropriately to his teachers. The undersigned finds that the overall record supports a less than marked limitation in the domain of acquiring and using information.

(R. at 24.)

The plaintiff first challenges the ALJ's determination as having relied on inconsistent and subjective testimony about R.R.'s IQ scores from medical expert Dr. Ballas. The plaintiff does not allege any particular inconsistency in the testimony about R.R.'s IQ scores. Rather, she states, "this inconsistent testimony is throughout 20 pages of the transcript of Dr. Ballas' testimony." (Pl.'s Br. Supp. Mot. Summ. J. at 3.) I disagree.

The previously discussed inconsistency in Dr. Ballas' testimony—a "marked" limitation in interacting and relating with others and a "less than 'marked'" impairment in age-appropriate social functioning—does not justify completely disregarding that testimony. *Cf. Iwachniuk v. Chater*, 926 F. Supp. 753, 759 (N.D. Ill. 1996) (refusing to reject report of consulting psychologist who inconsistently concluded claimant had an "extreme" limitation in the ability to work with simple instructions, but only a "marked" limitation in the ability to work with detailed instructions). This is especially true when considering that the ALJ evaluated

- 12 -

Dr. Ballas' opinion in light of the entire record, including R.R.'s medical records, school records, and testimony from his mother.

The plaintiff does point to specific testimony from Dr. Ballas that she alleges was subjective. She argues, "Dr. Ballas indicates that the claimant is close to two standard deviations from the mean in IQ scores. However, Dr. Ballas indicates that interpretation could be somewhat subjective." (Pl.'s Br. Supp. Mot. Summ. J. at 3 (citing R. at 639-40).)

The plaintiff's argument mischaracterizes Dr. Ballas' testimony. When asked whether "a third-grade spelling for a 9th grader isn't two standard deviations down," Dr. Ballas replied, "we can make a subjective judgment on that," and went on to explain what the objective data suggest. (R. at 639.) Before the ALJ interrupted, Dr. Ballas had clarified, "insofar as the testing that is reported by the school psychologist and so forth that he's gone through, the objective data do not suggest that there's—." (*Id*.) Dr. Ballas' clearly expressed opinion that "none of R.R.'s achievement scores are two standard deviations below the mean" was not subjective in nature. (*See* R. at 638.) Furthermore, the ALJ properly weighed the testimony about R.R.'s IQ scores, having considered it "together with the other information . . . about . . . [R.R.'s] functioning, including reports of classroom performance and the observations of school personnel and others." 20 C.F.R. § 416.926a(e)(4)(ii).

Second, the plaintiff argues that the ALJ erred by completely ignoring evidence of a marked memory deficit from William C. Steinhoff, M.A. As an initial matter, this argument simplifies Steinhoff's conclusion. He did not opine that R.R.'s memory was limited in a general sense, but more specifically concluded, "[i]mmediate memory appeared mildly deficient with markedly deficient recent memory. Remote memory appeared mildly deficient." (R. at 370.)

Furthermore, the ALJ did not ignore the evidence from Steinhoff. This is apparent because the ALJ summarized and cited to Steinhoff's findings in his opinion. (R. at 23 (citing Ex. B6F).) It is true that the ALJ did not specifically recite Steinhoff's conclusions regarding R.R.'s memory, but it was not necessary for him to do so. R.R.'s memory impairments do not seem to have impacted Steinhoff's own assessment of the child's ability to acquire and use information.[3] Steinhoff concluded that,

> [d]uring the evaluation the claimant did put forth effort at times and the above reported test scores are not considered to be [an] accurate assessment of intellectual functioning. Past test results indicate low-average intellectual abilities, but do[] appear consistent with verbal

---

[3] The domains have changed since Steinhoff completed his August 20, 1999, evaluation. The current "acquiring and using information" domain is analogous to the old "cognition" domain. *See Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 85 n.4 (2d Cir. 2003) (citing 65 Fed. Reg. at 54,755 (Sept. 11, 2000) (to be codified at 20 C.F.R. § 416.926a(b)(1)). The old "communication" domain was distributed among each of the other categories. *Id*.

- 14 -

> interaction with this evaluator and therefore intellectual abilities are likely to fall within the low-average range. Academic skills did appear rather poorly developed, falling at the upper end of the borderline to the low-average range in all three areas. This does not, however, meet the diagnostic criteria for a specific learning disability.

(R. at 371.) The ALJ discussed Steinhoff's findings in enough detail for me to determine that substantial evidence supports the ALJ's determination.

Third, the plaintiff argues that the ALJ erred by inconsistently concluding that R.R. has no marked limitation in acquiring and using information, but has a marked limitation in interacting and relating with others. Specifically, she argues the ALJ's observation that "[R.R.] is able to communicate effectively in school, at home and in the community," is inconsistent with the finding that R.R. has a marked limitation in interacting and relating with others. (*See* R. at 24.)

Communication is relevant to each of the six domains. *See Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 85 n.4 (2d Cir. 2003) (explaining that the regulations formerly contained a "communication" domain, which was distributed among each of the other domains when the regulations were changed). "[A] child's problems with speech and language . . . need to be assessed in both the 'acquiring and using information' domain as well as the 'interacting and relating with others' domain. . . ." *Kittles ex rel. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 489 (E.D.N.Y. 2003).

However, the effect of such problems on the two domains need not be the same; the domains do not assess the same abilities.[4]

The ALJ made the statement at issue, "[R.R.] is able to communicate effectively in school, at home and in the community," in support of his conclusion that R.R. has a less than marked limitation in acquiring and using information. (*See* R. at 24.) This is not inconsistent with the ALJ's finding that R.R. has a marked limitation in interacting and relating with others. In his discussion of the latter domain, the ALJ observed, "all of the documentation submitted into evidence indicates that [R.R.] usually gets along with his peers, has friends at school, is able to initiate and maintain age-appropriate relationships, gets along well with his cousin, teachers and adults in general." (R. at 25.) The ALJ's finding in the "interacting and relating with others" domain was not based on a defect in R.R.'s ability to "communicate effectively in school, at home and in the community." Therefore, the ALJ's determination as to these two domains was not inconsistent.

---

[4] As previously explained, the "acquiring and using information" domain assesses speech and language problems as they relate to the child's ability to learn and use information. 20 C.F.R. § 416.926a(g). The "interacting and relating with others" domain examines speech and language problems as they relate to the child's ability to "initiate and sustain emotional connections with others, develop and use . . . language . . . , cooperate with others, comply with rules, respond to criticism, and respect . . . [others'] possessions." *Id*. at § (i).

Contrary to the plaintiff's contention, R.R.'s IQ scores, alleged memory deficit, and marked impairment in interacting and relating with others do not demand a finding of a marked limitation in acquiring and using information. The ALJ's decision considered all relevant evidence in the record and did not, as the plaintiff suggests, place undue weight upon or ignore any individual opinion. Accordingly, I conclude the ALJ's determination that R.R.'s impairments do not "equal" § 112.10 and § 112.11 is supported by substantial evidence.

## *IV. Conclusion.*

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: June 3, 2005

/s/ JAMES P. JONES
Chief United States District Judge

- 17 -

Case 1:04-cv-00085-JPJ-PMS   Document 17   Filed 06/03/05   Page 17 of 17   Pageid#: 55